*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IVAN LEE, | : | |
| | : | Civil Action No. 16-4709 (SDW) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |

**WIGENTON**, District Judge:

Presently before the Court is the final claim of Petitioner Ivan Lee's motion to vacate sentence brought pursuant to 28 U.S.C. § 2255 challenging his criminal conviction and sentence. (ECF No. 1). Following an order to answer, the Government filed a response to the motion (ECF No. 12), to which Petitioner replied. (ECF No. 13). This Court then denied all of Petitioner's claims save for his claim that counsel provided ineffective assistance during plea negotiations. (ECF Nos. 14-15). A hearing was held on this claim on May 6, 2019. (ECF No. 20). For the reasons set forth below, this Court will deny Petitioner's final remaining claim and will deny Petitioner a certificate of appealability as to that claim.

**I. BACKGROUND**

In denying Petitioner's other claims, this Court described the background of this matter as follows:

> Petitioner was charged with the carjacking of a vehicle and brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). *See United States v. Lee*, 634 F.

> App'x 862, 863 (3d Cir. 2015). Although Petitioner pled guilty to the carjacking, he denied that he had been the one to use a shotgun during the carjacking, and proceeded to trial on the charge of brandishing a weapon. *Id.* Essentially, Petitioner sought at trial to claim that his co-defendant, Hanzah Darby, had brought and used a shotgun during the carjacking without previously informing Petitioner of the weapon. Following trial, however, the jury rejected that defense and found Petitioner guilty of brandishing a weapon in furtherance of a crime of violence. *Id.* This Court thereafter sentenced Petitioner to a combined sentence of 168 months imprisonment, including a 100 month sentence on the § 924(c) charge. *Id.* Petitioner appealed, and the Third Circuit affirmed by way of an opinion issued on December 8, 2015. *Id.* Petitioner thereafter filed his current motion to vacate sentence. (ECF No. 1).

(ECF No. 14 at 1-2).

Following this Court's prior order and opinion (ECF Nos. 14-15), only a single claim remains in this matter – Petitioner's claim that counsel provided ineffective assistance in relation to a plea agreement which led to Petitioner proceeding to trial when he would otherwise have pled guilty. According to Petitioner in his initial brief in this matter "counsel told [Petitioner] that no one could identify him and put a weapon in his hand" and that because "no witnesses [could] identify[] him as being in possession of a firearm he could not be convicted of violating 18 U.S.C. § 924(c)." (Document 2 attached to ECF No. 1 at 24). Had he not been advised that "there was no evidence or anyone identifying him, or placing a firearm in his hands," Petitioner alleged, he would have pled guilty to the § 924(c) charge. (*Id.* at 25). This proved false advice, Petitioner argues, when "one of [the Government's" witnesses – [his co-defendant] Darby[]" testified at trial that Petitioner had brought and used the gun during the carjacking. (*Id.* at 24-25).

At the hearing on this final claim, both Petitioner and his trial counsel testified regarding the advice Petitioner was given which resulted in Petitioner choosing to go to trial on the § 924(c)

2

charge rather than plead guilty. (*See* ECF No. 20; *see also* Hearing Tr. at 3). During his testimony, trial counsel stated that he had been an attorney since 1993 and has been practicing criminal law, mostly in the federal system, since 1995. (Hearing Tr. at 8-9). Counsel confirmed that he had been involved in close to one hundred federal criminal cases at both the trial and appellate level, and that he was a member of this Court's CJA panel. (*Id.* at 9-10). Counsel then explained the background of his representation of Petitioner. (*Id.* at 11).

Petitioner's trial counsel testified that he was not Petitioner's original attorney, but instead was appointed to Petitioner's case in December 2013, when he replaced Petitioner's assigned federal public defender after he and Petitioner had reached an impasse. Specifically, Petitioner wished to proceed to trial and the assistant federal public defender thought that option foolish. (*Id.* at 11-14). Counsel thereafter represented Petitioner through plea negotiations, his guilty plea to carjacking, and at Petitioner's trial in July 2014. (*Id.*). During that time, counsel met with Petitioner "quite a few" times during which he became prepared to try Petitioner's case. (*Id.* at 13). This included reviewing the discovery in its entirety with Petitioner. (*Id.* at 13-14). According to counsel, Petitioner "wasn't comfortable just pleading guilty," and the two therefore had a conversation regarding Petitioner's options, which, at the time, included a plea offer which would require Petitioner to plead guilty to the entire indictment. (*Id.* at 15-16). Counsel stated that he advised Petitioner that he could either go to trial on both charges, plead to both, or plead guilty to carjacking and proceed to trial only on the § 924(c) charge and possibly still retain the ability to receive acceptance of responsibility credit as to his carjacking sentence. (*Id.* at 16). Counsel stated that going to trial on the § 924(c) charge would be based entirely on Petitioner's claim that he did not use the shotgun and was unaware at the time the carjacking occurred that his

3

co-defendant had brought and would use the weapon during the carjacking. (*Id.* at 16-17).

Although counsel could not recall the exact contours of how many conversations they had on the issue, counsel testified that he "certainly advised [Petitioner] that the likelihood was that he was going to get convicted if he went to trial on one count or both counts," and that he tells every federal client that conviction rates in federal criminal proceedings are over ninety percent and convictions following trial occur in over ninety percent of trials. (*Id.* at 17). Although counsel could not specifically recall talking to Petitioner about accomplice liability and how he could be held responsible for his co-defendant's use of a shotgun during the carjacking, counsel was "fairly certain" he discussed it with Petitioner because it was his general practice to discuss it with all criminal clients involved in such cases. (*Id.* at 19). Counsel acknowledged that the concept of accomplice liability "made it less likely that [Petitioner was] going to prevail at trial." (*Id.*). Counsel further testified that, prior to Petitioner's guilty plea and trial, he became aware through discovery that Petitioner's co-defendant would testify against him at any trial and would testify that it was Petitioner who used the shotgun during the carjacking, information he testified he communicated to Petitioner before Petitioner chose to plead guilty. (*Id.* at 20-23). Although he could not recall exactly when they discussed it, counsel confirmed that he discussed with Petitioner the "very real possibility" that his co-defendant would testify that Petitioner had used the shotgun prior to Petitioner deciding to go to trial. Counsel testified that he and Petitioner did not believe that either victim would identify Petitioner because there was no discovery suggesting such an identification could be made. (*Id.* at 25-26).

In his testimony, Petitioner confirmed that although the discovery suggested that the victim could not identify him, counsel specifically told him that Darby would very likely testify at trial

that Petitioner had brought and used the shotgun. (*Id.* at 41, 47-49). Petitioner asserted, however, that this fact did not conflict with his claim that counsel told him no one could identify him because he knew and told counsel that his co-defendant's testimony "was a lie." (*Id.* at 49). Despite Petitioner's claim that he was told no one could identify him, Petitioner thus specifically confirmed that he "knew that [it was a possibility that] Hanzah Darby [would] testify and put [the] gun in [Petitioner's] hand" if Petitioner went to trial because counsel had told him as much before he chose to proceed to trial. (*Id.* at 50).

## II. DISCUSSION

### A. Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J.

2003).

## B. Credibility Findings

Having held an evidentiary hearing in this matter and having had the opportunity to observe the demeanor and testimony of the witnesses at that hearing, this Court makes the following credibility determinations. This Court finds the testimony of Petitioner's trial counsel, Mark Berman, very credible. Although counsel could not recall all details of his representation of Petitioner, which is not surprising giving the passage of some five years between Petitioner's trial and the hearing in this matter, counsel's testimony was forthright and responsive on both direct and cross examination and counsel readily admitted when he could not remember specific information. Importantly, this Court credits counsel's testimony that he discussed with Petitioner the fact that Petitioner's co-defendant was likely to testify against Petitioner, that Petitioner would most likely be convicted if he went to trial, and the effect accomplice liability would have on Petitioner's case.

Although his testimony largely agreed with that of counsel, this Court finds Petitioner less credible to the extent his testimony was contrary to that of counsel. Petitioner was obviously and visibly nervous during his testimony, which increased significantly during cross examination. Indeed, cross-examination testimony was briefly stopped because Petitioner began to sweat profusely and needed time to re-collect himself before cross-examination could continue. (*See* Hearing Tr. at 47). Given Petitioner's obvious nervousness and his reaction to conversational and non-combative cross-examination, this Court finds Petitioner less credible than trial counsel and will discount his testimony to the extent it conflicts with that of counsel.

6

### C. Petitioner's ineffective assistance of plea counsel claim

In his sole remaining claim, Petitioner contends that he received ineffective assistance of counsel in relation to a plea and would not have proceeded to trial absent the allegedly deficient advice of counsel. Criminal defendants have "a Sixth Amendment right to counsel, [which] extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). Such an individual can therefore seek relief from their convictions based on the ineffective assistance of counsel. *Id.* This requires them to first show that counsel's representation "fell below an objective standard of reasonablenss." *Id.* at 163. In addressing a guilty plea, counsel is required to provide a defendant with sufficient information that he can "make a reasonably informed decision whether to accept a plea offer," which will generally require counsel to discuss with a petitioner the facts of his case, his likelihood of conviction, and his comparative sentencing exposure at trial and through a plea. *United States v. Bui*, 795 F.3d 363, 366-67 (3d Cir. 2015) (quoting *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013); *see also Lafler*, 566 U.S. at 163; *Hill v. Lockart*, 474 U.S. 52, 57-58 (1985).

Even where a petitioner can show that he received constitutionally defective advice from counsel, he will not be entield to relief unless he can show that he was prejudiced by counsel's failings. This requires the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [which i]n the context of pleas [requires] a [petitioner] show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, --- U.S. ---, ---, 132 S. Ct. 1376, 1384-85 (2012). A petitioner makes out such a claim where he shows that he would have accepted the

7

proposed plea agreement absent counsel's deficient advice, that the deal in question would not have been withdrawn by the Government, and that the sentence received pursuant to the offered plea would have been less severe than the result of his trial. Id. at 1385.

In this matter, Petitioner argued that his trial counsel proved ineffective in advising him to proceed to trial rather than plead guilty because "no one" could testify at trial that Petitioner possessed or used the shotgun in the carjacking he and his co-defendant committed. The testimony at the hearing of this matter directly contradicts this claim. Both counsel and Petitioner testified that counsel thoroughly reviewed the facts of this matter with Petitioner and directly informed Petitioner that it was extremely likely at trial that Petitioner's co-defendant would testify that Petitioner both possessed and used the shotgun during the carjacking. Counsel and Petitioner likewise agreed that counsel informed him that his likelihood of success at trial was low, and counsel testified that Petitioner was informed that he could also be found guilty through an accomplice liability theory even if it was Darby, and not Petitioner, who made use of the shotgun. The credible testimony during the hearing thus clearly demonstrates that Petitioner was directly informed that someone – specifically his co-defendant Darby – could place the shotgun in his hands, and that his chances at trial would be slim. The hearing testimony, including Petitioner's own testimony, thus directly refutes the assertion in Petitioner's motion that he was provided deficient advice by counsel. As the hearing testimony clearly shows that Petitioner received more than adequate assistance from counsel, Petitioner's assertion to the contrary is without merit. Petitioner's final claim is therefore denied.

**III. CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason could not disagree with this Court's conclusion that Petitioner's plea-related claim is without merit, Petitioner has failed to make a substantial showing of the denial of a constitutional right, and no certificate of appealability shall issue.

## IV. CONCLUSION

For the reasons stated above, Petitioner's plea-related ineffective assistance of counsel claim is DENIED and Petitioner is DENIED a certificate of appealability. An appropriate order follows.

Dated: July 17, 2019                          *s/ Susan D. Wigenton*
                                                                           Hon. Susan D. Wigenton,
                                                                           United States District Judge